OPINION OF THE COURT
Meyer, J.
 Health insurance benefits are not within the protection of article V, section 7 of the State Constitution, and on the facts of this case there was no contract, express or implied, by respondent Board of Education not to reduce its contribution to payment of health insurance premiums of retired employees and their dependents. There should, therefore, be an affirmance, without costs.
I
Article 11 of the Civil Service Law authorizes the establish *316 ment of a State health insurance plan and section 163 of that law authorizes the inclusion in the plan of employees and retired employees of, among others, school districts, electing to participate in the plan. Section 167 (2) requires each participating employer to pay not less than 50% of the cost of premium or subscription charges for the coverage of such employees and 35% of the cost of coverage for their dependents, and provides that such an employer may elect to pay higher rates of contribution. Subdivision 3 of the section directs that any contribution required to be made by an employee or retired employee for his or her coverage or coverage of his or her dependents shall be deducted from salary payments or retirement allowance as the case may be.
In 1971 the Board of Education of Sewanhaka Central School District adopted a resolution directing payment by it of 100% of the health insurance premiums for its retired employees and 50% of the premiums for dependents of retirees. By resolution adopted in March 1983 and effective July 1, 1983, however, the Board reduced the district’s contribution from 100% to 50% of premiums for retired employees and from 50% to 35% of premiums for dependents of retirees. The present article 78 proceeding was then begun by petitioner Lippman, a currently employed teacher eligible for retirement, and petitioners Vandenburgh and Woll, retired teachers formerly employed by the district. The proceeding sought rulings that the reduction in contributions was arbitrary and capricious and declaratory judgment that it is in violation of article V, section 7 of the State Constitution and of the vested contract rights of petitioners and others similarly situated. Special Term rejected petitioners’ arbitrary and capricious contention as well as the Board’s defense based upon Education Law § 3813, but held health benefits premiums payable with respect to employees who retired prior to the July 1, 1983 effective date of the Board’s resolution reducing contributions to be protected by the Constitution. On appeal by the Board of Education to the Appellate Division, that court, noting that no part of the health insurance premium contributed by the school district came from the retirement system and that the reduction made by the 1983 resolution had no impact on how a retiree’s pension is calculated and did not otherwise impair a retirement system benefit, modified Special Term’s judgment and dismissed the proceeding as to all respondents. On petitioner’s appeal to us they have abandoned, by failing to argue, their CPLR 7803 (3) contention. We *317 conclude that health insurance benefits are not within the protection of the constitutional provision and that there is no contractual impediment to reduction of the Board’s contribution to health insurance premiums to the 50% and 35% levels called for by Civil Service Law § 167 (2). We, therefore, affirm.
II
Article V, section 7 of the Constitution provides that "[a]fter July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.” That provision protects only the benefits of membership in a retirement system; other employment conditions, though they may be protected by statute, resolution or individual or collective bargaining agreement, are not within its coverage. That no more was intended is evident from the memorandum of the Constitutional Convention Committee which proposed the provision, which stated (2 Revised Record of 1938 New York State Constitutional Convention, at 1405): "It is a substantial factor in entering the permanent Civil Service of the government, State or local, 'career service’ as some call it, that the employee can look forward to a pension or retirement allowance when his service is over. That reward or benefit is part of the compensation which he accepts in lieu of the greater rewards of private employment. The membership in a pension or retirement system is, therefore, substantially a contractual relationship when the member joins the system. The benefits which are the essence of that contract should not be diminished or impaired. That protection is given by this proposed amendment.” (Emphasis supplied.) As that statement makes clear, more than an incidental relationship to the retirement system must be found before an employee benefit will be held to be within the area of action prohibited by the Constitution (Cook v City of Binghamton, 48 NY2d 323; see, Majauskas v Majauskas, 61 NY2d 481; Brown v New York State Teachers Retirement Sys., 19 NY2d 779, affg 25 AD2d 344).
The cases which have held the constitutional provision violated all involved changes directly related to the retirement benefit — in Public Employees Fedn. v Cuomo (62 NY2d 450), to prevent change concerning refund of retirement contributions upon resignation through the device of limiting the duration of the statutory provision and then successively extending it;
*318 Kleinfeldt v New York City Employees’ Retirement Sys. (36 NY2d 95, 101), with respect to the rate of compensation part of the retirement formula (but with the recognition that "[t]his does not mean necessarily, and it should not be decided now, that no part of the formula, however trivial, or however within the contemplation of the 'contracting parties’ would never be subject to retroactive modification”); Matter of Weber v Levitt (34 NY2d 797, affg 41 AD2d 452), in relation to final average salary for pension purposes; Matter of Donner v New York City Employees’ Retirement Sys. (33 NY2d 413), concerning the right to reenter the retirement system after withdrawal from service; Matter of Hessel v New York City Employees’ Retirement Sys. (33 NY2d 381), in relation to what part of terminal leave pay was includible in computing the retirement benefit; Kranker v Levitt (30 NY2d 574), with respect to the inclusion of vacation pay in computing the retirement benefit; Matter of Ayman v Teachers’ Retirement Bd. (9 NY2d 119), concerning the calculation of the annuity portion of the retirement allowance; Birnbaum v New York State Teachers Retirement Sys. (5 NY2d 1), same as Ayman. The only such holding not directly related to benefit computation is Sgaglione v Levitt (37 NY2d 507), which invalidated a legislative direction to the Comptroller as administrative head of the retirement system to invest in Municipal Assistance Corporation bonds because the effect was "to remove a safeguard integral to the scheme of maintaining the security of the sources of benefits for over half a century” (id., at p 512), and "because the means designed to assure benefits to public employees and those already retired will be impaired by the offending device” (id., at p 511 [emphasis supplied]).
While Sgaglione concerned a less direct relationship to retirement benefits than the other cases reviewed, there was nevertheless a real and important nexus; the Comptroller’s discretion was an integral part of the plan by which such benefits are provided. Here, to the contrary, the only relation between health benefits and retirement benefits is the purely incidental one that the latter provides the means by which the former is paid in those instances where the employer has elected to pay less than the full premium. The result of a reduction in the proportion of the health insurance premium paid by the school district is that a retiree will receive a smaller retirement check, but this is no more a change in retirement benefits than would be an increase in the price of eggs at the supermarket or in a retiree’s apartment rent. The retiree has less to spend, but there has been no change in his *319 retirement benefit. Payment of part or all of his or her health insurance premium is a benefit that comes to a retired employee not as a benefit of membership in the retirement system but because he or she was an employee of the State of New York or participating employer, as to whom the Legislature has provided, in Civil Service Law § 167, that part of the premium shall be paid by the employer and that the employer may, if it so chooses, increase the portion of the premium that it pays.
The more particularly is this so because the health insurance premium payment provision is contained not in the Retirement and Social Security Law but in section 167 of the Civil Service Law, which provides health insurance benefits not only to retired employees but also to employees still in service. As originally enacted in Laws of 1956 (ch 461), the provision with respect to contributions of retired employees was contained in section 127 (2), which read: "During any period in which a retired employee is covered under this article, after the date of his retirement, contributions shall be deducted from his retirement allowance in the amounts prescribed by the [temporary health insurance] board.” By the Laws of 1967 (ch 617, § 6), that provision became Civil Service Law § 167 (3) and was revised to read: "Contributions, if any, required to be paid by an employee or a retired employee for his coverage and for the coverage of his dependents, if any, shall be deducted from his salary payments or from his retirement allowance, as the case may be.” Nothing in the wording of article 11 suggests that employer contributions above the statutory mínimums were intended to be frozen once made or that the separately enacted provisions of the health insurance benefit article were intended to be a retirement benefit within the meaning of the Constitution. Indeed, the direction in section 167 (3) for payment of a retired employee’s share, whatever it may be, "from his retirement allowance” strongly suggests the contrary.
Ill
With respect to the claimed contractual right to continuation of the 100% and 50% contributions provided for by the 1971 resolution, we agree with the Appellate Division’s conclusion (104 AD2d, at p 126) that the record does not support the claim. We add that there is, indeed, positive evidence to the contrary in the provisions of the Health Insurance Program *320 Manual for Participating Subdivisions that such subdivisions may unilaterally adjust rates of contribution.*
For the foregoing reasons, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Wachtler and Judges Jasen, Simons, Kaye, Alexander and Titone concur.
Order affirmed, without costs.

 Sections 050 and 605 of the Manual. The former states that: "An agency which has established rates higher than the minimum may also reduce its rates of contribution so long as they are not reduced below the legally mandated mínimums.” The latter provides that: "For those retired employees who are not subject to a negotiated agreement and for active employees who are not members of any negotiating unit, an agency may retain or adjust the existing rates of contribution unilaterally.”